# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

## Case No. 23-cv-61710-BLOOM

TRAVIS LEE SLADE,

   Petitioner,

v.

STATE OF FLORIDA,

   Respondent.

_____/

## ORDER ON PETITION UNDER 28 U.S.C. § 2254 FOR WRIT OF HABEAS CORPUS

   **THIS CAUSE** is before the Court on Petitioner Travis Lee Slade's ("Petitioner") *pro se* Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody ("Petition"), ECF No. [1], and his Memorandum of Law, ECF No. [3]. Petitioner challenges his convictions and sentences in case number 15-013139CF10A, entered in the Seventeenth Judicial Circuit Court in and for Broward County, Florida. *See generally* ECF No. [1]. Respondent filed a Response, ECF No. [9], with an attached appendix, ECF Nos. [10-1] and [10-2], and a Notice of Filing Transcripts, ECF Nos. [11-1]–[11-3]. The Court has carefully considered the record, the parties' written submissions, the applicable law, and is otherwise fully advised. For the reasons that follow, the Petition is dismissed in part on procedural grounds and denied in part on the merits.

## I.  BACKGROUND

   On November 6, 2015, Petitioner was charged by Information with three counts: two counts of attempted first-degree murder (Counts 1 and 2) and possession of a firearm by a convicted felon (Count 3). *See* ECF No. [10-1] at 7–8. The State of Florida alleged that, on October 10, 2015, Petitioner's brother and one of the victims, Eddie Robinson, got into an argument and physical altercation outside of a restaurant and bar in Dania Beach, Florida. *See* ECF No. [10-1]

at 61–62. As the melee progressed, both Robinson and Petitioner retrieved and brandished their firearms; the end result was that Petitioner shot Robinson and a bystander. *See id.* at 62.

The state court initially appointed the Public Defender's Office to represent Petitioner. *See* ECF No. [10-1] at 11. However, defense counsel moved for a *Faretta*[1] hearing after Petitioner demanded that counsel withdraw from the case because counsel would not file a demand for a speedy trial. *See* ECF No. [11-1] at 3. After conducting the hearing, the state court found that Petitioner had made an "unequivocal request for self-representation" and that he had knowingly and voluntarily waived his right to counsel. *Id.* at 13. The state court still required the Public Defender's Office to serve as Petitioner's standby counsel during the trial. *See id.* at 12–13. Prior to jury selection, standby counsel warned Petitioner that, because he was not Petitioner's attorney, he had only "looked at the case for probably less than 30 minutes" since Petitioner elected to represent himself and he was "not ready" if Petitioner wanted standby counsel to take over. ECF No. [11-2] at 13.

Petitioner represented himself during the first two days of the trial. However, at the onset of the third day, the State announced its intention to admit several 911 calls into evidence. *See id.* at 434. Petitioner objected to the admission of these calls, and the following exchange took place:

> The Court: Okay. All right. Mr. Slade, I appreciate your argument. Let me do this. Before I go ahead and rule, we're in the middle of trial now. You made it through openings. Jury selection. Openings. Nine witnesses. There is a motion that is being argued now. There [are] more witnesses to be called today. It's the third day of the trial. Do you want me to give you a lawyer, sir?
>
> [. . .]
>
> [Petitioner]: To help me out from here? I don't want to start the trial over.
>
> The Court: If I appoint a lawyer to represent you, that lawyer will take you from here, forward. It's not just to argue the motion and then you don't have a lawyer anymore. The lawyer will do the rest of the work today.

---

[1] *See Faretta v. California*, 422 U.S. 806 (1975).

[Petitioner]: Yes, sir.

The Court: Do you want a lawyer?

[Petitioner]: Yes, sir.

*Id.* at 440. The trial court then appointed standby counsel to be Petitioner's lawyer for the remainder of the trial. *See id.* Counsel immediately moved for a continuance since he was not "prepared on the case" and had not had the opportunity to fully review the evidence. *See id.* at 441. The court denied the motion, reasoning that Petitioner had already invoked his right to a speedy trial and that counsel had observed the proceedings and had the opportunity to review the evidence and the witness testimony. *Id.* Despite this warning, Petitioner reaffirmed that he wanted standby counsel to take over the case. *See id.* at 442. Standby counsel represented Petitioner for the rest of the trial.

The jury found Petitioner guilty of Counts 1 and 3 as charged in the Information and guilty of attempted second-degree murder, a lesser-included offense, on Count 2. *See id.* at 722–24. Defense counsel moved for a new trial, arguing, *inter alia*, that a continuance should have been granted after Petitioner invoked his right to counsel during the trial. *See* ECF No. [10-1] at 34–36. The state court denied the motion, *see* ECF No. [11-3] at 19, and then sentenced Petitioner to a total term of 35 years in the custody of the Florida Department of Corrections, *see* ECF No. [10-1] at 41–49.

Petitioner appealed his conviction and sentences to Florida's Fourth District Court of Appeal (the "Fourth DCA") on March 21, 2017. *See* ECF No. [10-1] at 51. Petitioner raised three arguments on appeal: (1) the trial court "abused its discretion when it allowed, over [Petitioner's] objections, the State to publish to the jury three 911 calls which were hearsay and in violation of the Confrontation Clause"; (2) the trial court "abused its discretion when it denied former standby

counsel's motion to continue the trial once he was requested for representation by Appellant mid-trial"; and (3) the trial court erred in admitting "double hearsay statements concerning what [Petitioner] stated to another witness whom did not testify, which directly implicated [Petitioner] as the shooter." ECF No. [10-1] at 63. On July 26, 2018, the Fourth DCA affirmed Petitioner's conviction in an unwritten, *per curiam* opinion. *See Slade v. State*, 250 So. 3d 682 (Fla. 4th DCA 2018).

On January 16, 2019,[2] Petitioner filed a *pro se* motion for postconviction relief under Fla. R. Crim. P. 3.850 (the "Postconviction Motion"). *See* ECF No. [10-1] at 143–62. The Postconviction Motion raised nine grounds for relief, all alleging that counsel was ineffective for: (1) failing "to object to improper comments by the prosecutor during closing arguments," *id.* at 144; (2) failing to call Petitioner's mother as a witness, *id.* at 149; (3) improperly arguing "a motion for judgment of acquittal based upon the insufficiency of the evidence," *id.* at 151; (4) failing to have Count 3 (the possession of a firearm by a convicted felon charge) bifurcated from trial, *id.* at 153; (5) failing to recall one of the victims as a witness in his defense case, *id.* at 154; (6) failing "to prepare for trial," *id.* at 156; (7) failing to "file a motion *in limine* to exclude 911 calls," *id.* at 158; (8) failing to file a motion *in limine* to prevent Deputy Justin Colon from testifying about "double hearsay," *id.* at 159; and (9) cumulative error, *id.* at 160–61. The state postconviction court denied the Postconviction Motion on April 15, 2019. *See* ECF No. [10-1] at 239-40.

Petitioner then filed a motion for rehearing on April 20, 2019, arguing that the State and the state postconviction court failed to consider "additional issue(s) raised in his *pro se* Memorandum of Law." *Id.* On December 16, 2021, after extensive motion practice, the state

---

[2] "Under the 'prison mailbox rule,' a *pro se* prisoner's court filing is deemed filed on the date it is delivered to prison authorities for mailing." *Williams v. McNeil*, 557 F.3d 1287, 1290 n.2 (11th Cir. 2009) (citations omitted).

postconviction court found that Petitioner should be granted leave to file an amended postconviction motion, provided that the amended motion would not "re-raise any of the nine claims for relief contained in Defendant's original [Postconviction Motion]." *Id.* at 240. Petitioner filed his amended Rule 3.850 motion and memorandum of law (the "Amended Postconviction Motion") on January 14, 2022. *See* ECF No. [10-1] at 197–234. Petitioner raised six additional arguments: (1) "Petitioner was denied due process" because he was convicted of a "non-existent offense" on Count 2, *id.* at 211; (2) Petitioner was "denied a fair trial" when the prosecutor improperly bolstered the credibility of the State's witnesses, *id.* at 214–15; (3) Petitioner's conviction on Count 3 was pursuant to an impermissible bill of attainder, *id.* at 223–24; (4) the trial court failed to conduct "the proper *Faretta* test" to find if Petitioner knowingly and voluntarily waived his right to counsel, *id.* at 226; (5) Petitioner's right to a fair trial on Count 1 of the information "was compromised" by testimony about a non-existent offense, *id.* at 227; and (6) cumulative error, *id.* at 229. On July 20, 2022, the state postconviction court denied the entirety of Petitioner's Amended Postconviction Motion. *See* ECF No. [10-1] at 257.

Petitioner appealed the denial of his Postconviction Motion and Amended Postconviction Motion to the Fourth DCA on August 19, 2022. *See* ECF No. [10-1] at 259. Petitioner raised five arguments on appeal: (1) the trial court "erred in refusing to address [Petitioner's] claim that [Petitioner] had been convicted for a non-existent offense," ECF No. [10-1] at 276; (2) counsel was ineffective for failing to object "to the prosecutor's vouching or bolstering" of the State's witnesses, *id.* at 283; (3) the trial court "deprived [Petitioner] of his right to the effective assistance of counsel" by refusing to grant standby counsel a continuance, *id.* at 293–94; (4) the trial court's cumulative errors deprived Petitioner of a fair trial, *id.* at 294; and (5) counsel was ineffective for failing to file a motion to bifurcate the firearm offense (Count 3) from the remaining counts, *id.* at

295–96. On January 19, 2023, the Fourth DCA summarily affirmed the state postconviction in an unwritten opinion. *See Slade v. State*, 354 So. 3d 1095 (Fla. 4th DCA 2023). The Fourth DCA's mandate was issued on February 17, 2023. *See* ECF No. [10-2] at 4. The instant Petition was timely filed on August 28, 2023. *See* ECF No. [1] at 15.[3]

## II.    LEGAL STANDARD

### A.    Deference under § 2254

A court's review of a state prisoner's federal habeas corpus petition is governed by the Antiterrorism and Effective Death Penalty Act ("AEDPA"). *See Abdul-Kabir v. Quarterman*, 550 U.S. 233, 246 (2007). "The purpose of [the] AEDPA is to ensure that federal habeas relief functions as a guard against extreme malfunctions in the state criminal justice systems, and not as a means of error correction." *Ledford v. Warden, Ga. Diagnostic & Classification Prison*, 818 F.3d 600, 642 (11th Cir. 2016) (quoting *Greene v. Fisher*, 565 U.S. 34, 38 (2011)). This standard is "difficult to meet." *White v. Woodall*, 572 U.S. 415, 419 (2014) (citation omitted).

Under the AEDPA, a federal court may not grant a habeas petitioner relief on any claim adjudicated on the merits in state court unless the state court's decision (1) "was contrary to, or involved an unreasonable application of, clearly established [f]ederal law, as determined by the Supreme Court of the United States;" or (2) "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1)-(2).

A state court decision is contrary to established Supreme Court precedent when it (1) applies a rule that contradicts the governing law set forth by the Supreme Court; or (2) confronts a set of facts materially indistinguishable from a decision of the Supreme Court and

---

[3] Respondent concedes that the Petition "appears to be timely." ECF No. [9] at 4. Since Respondent "intelligently choose to waive a statute of limitations defense," the Court presumes that the Petition is timely without conducting its own timeliness analysis. *Day v. McDonough*, 547 U.S. 198, 210 n.11 (2006).

nevertheless arrives at a result different from Supreme Court precedent. *See Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). An "*unreasonable* application of [clearly established] federal law is different from an *incorrect* application of federal law." *Id.* at 410 (emphasis in original). Consequently, "[a] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (citation omitted). If the last state court to decide a prisoner's federal claim provides an explanation for its merits-based decision in a reasoned opinion, "a federal habeas court simply reviews the specific reasons given by the state court and defers to those reasons if they are reasonable." *Wilson v. Sellers*, 138 S. Ct. 1188, 1192 (2018).

This is "a highly deferential standard for evaluating state-court rulings" which "demands that state-court decisions be given the benefit of the doubt[.]" *Renico v. Lett*, 559 U.S. 766, 773 (2010) (quotation marks, citations, and footnote call number omitted). Deferential review under § 2254(d) is generally limited to the record that was before the state court that adjudicated the claim on the merits. *See Cullen v. Pinholster*, 563 U.S. 170, 182 (2011).

Even summary rejection of a claim, without explanation, qualifies as an adjudication on the merits, warranting deference. *See Meders v. Warden, Ga. Diagnostic Prison*, 911 F.3d 1335, 1351 (11th Cir. 2019). If the state court's merits determination is unaccompanied by an explanation, federal courts should "'look through' the unexplained decision to the last related state-court decision that does provide a relevant rationale" and "presume that the unexplained decision adopted the same reasoning." *Wilson*, 138 S. Ct. at 1192. Finally, a decision is still an adjudication on the merits when it "addresses some but not all of a defendant's claims." *Johnson v. Williams*, 568 U.S. 289, 298 (2013).

**B.      Ineffective Assistance of Counsel**

The Sixth Amendment to the United States Constitution guarantees criminal defendants the right to assistance of counsel during criminal proceedings against them. *See Strickland v. Washington*, 466 U.S. 668, 684-85 (1984). This includes not just the right to the presence of counsel, but also "the right to the effective assistance of counsel." *Id.* at 686 (quoting *McMann v. Richardson*, 397 U.S. 759, 771 n.14 (1970)).

When assessing counsel's performance under *Strickland*, the Court employs a strong presumption that counsel "rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id.* at 690. "[T]he Sixth Amendment does not guarantee the right to perfect counsel; it promises only the right to effective assistance[.]" *Burt v. Titlow*, 571 U.S. 12, 24 (2013) (citation omitted). "Where the highly deferential standards mandated by *Strickland* and [the] AEDPA both apply, they combine to produce a doubly deferential form of review that asks only 'whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard.'" *Gissendaner v. Seaboldt*, 735 F.3d 1311, 1323 (11th Cir. 2013) (quoting *Harrington*, 562 U.S. at 105).

To prevail on a claim of ineffective assistance of counsel, a petitioner must demonstrate: (1) his counsel's performance was deficient, falling below an objective standard of reasonableness; and (2) he suffered prejudice resulting from that deficiency. *See Strickland*, 466 U.S. at 687-88. To establish deficient performance, a petitioner must show that, considering all circumstances, "counsel's conduct fell 'outside the wide range of professionally competent assistance.'" *Cummings v. Sec'y for Dep't of Corrs.*, 588 F.3d 1331, 1356 (11th Cir. 2009) (quoting *Strickland*, 466 U.S. at 690). "[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable[.]" *Strickland*, 466 U.S. at 690-91.

A court's review of counsel's performance should "only" focus on "what is constitutionally compelled" and not merely "what is possible or 'what is prudent or appropriate[.]'" *Chandler v. United States*, 218 F.3d 1305, 1313 (11th Cir. 2000) (en banc) (footnote call number omitted; quoting *Burger v. Kemp*, 483 U.S. 776, 794 (1987)). Counsel is not ineffective for failing to raise non-meritorious issues, *see Chandler v. Moore*, 240 F.3d 907, 917 (11th Cir. 2001) (citation omitted); nor is counsel required to present every non-frivolous argument, *see Dell v. United States*, 710 F.3d 1267, 1281 (11th Cir. 2013) (citation omitted).

To satisfy *Strickland*'s prejudice prong, "[t]he [petitioner] must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* A court need not address both prongs of *Strickland* if the defendant makes an insufficient showing on one of the prongs. *See id.* at 697; *Brown v. United States*, 720 F.3d 1316, 1326 (11th Cir. 2013) (citations omitted).

## III.   DISCUSSION

The Petition raises nine grounds for relief. *See generally* ECF Nos. [1, 3].[4] Petitioner alleges that: (1) trial counsel "failed to object to improper comments by the prosecutor during closing arguments," ECF No. [3] at 4; (2) counsel was ineffective for failing to call Petitioner's mother as a witness, *id.* at 9; (3) counsel was ineffective for failing "to properly and adequately argue a motion for judgment of acquittal based on upon the insufficiency of the evidence," *id.* at

---

[4] Respondent states that Petitioner raised only four grounds for relief in his Petition and that Ground Four consists of several subclaims. *See* ECF No. [9] at 6–7 & n.2. Although the Court agrees that the Petition itself only lists four grounds for relief, the "subclaims" within the Petition's fourth ground correspond to Grounds 4, 6, 7, 8, and 9 in Petitioner's memorandum of law. *Compare* ECF No. [1] at 11, *with* ECF No. [3] at 13–16, 18–22. Since the Court has an obligation to "resolve all claims for relief" raised by a habeas petitioner, it must review the nine grounds Petitioner lists in his Memorandum of Law. *Clisby v. Jones*, 960 F.2d 925, 936 (11th Cir. 1992) (en banc).

11; (4) counsel was ineffective for failing to file a motion to bifurcate the trial, *id.* at 13; (5) counsel was ineffective for failing to recall one of the victims, Eddie Robinson, to testify during the defense's case, *id.* at 16–17; (6) counsel was ineffective for failing to prepare for trial, *id.* at 18–19; (7) counsel was ineffective for failing "to file a motion in limine to exclude 911 calls," *id.* at 20; (8) counsel was ineffective for failing "to file a motion *in limine* to exclude hearsay," *id.* at 21; and (9) cumulative error, *id.* at 22. Respondent contends that Grounds Two and Three should be dismissed as procedurally defaulted and unexhausted. *See* ECF No. [9] at 6–7. The Court will first address Respondent's exhaustion defenses and then proceed to the merits of any remaining claims.

### A.    Exhaustion

Before seeking a federal writ of habeas corpus, "a state prisoner must exhaust available state remedies, 28 U.S.C. § 2254(b)(1), thereby [allowing] the State . . . to pass upon and correct alleged violations of its prisoners' federal rights." *Baldwin v. Reese*, 541 U.S. 27, 29 (2004) (quotation marks and citation omitted). "To provide the State with the necessary opportunity, the prisoner must fairly present his claim in each appropriate state court (including a state supreme court with powers of discretionary review), thereby alerting that court to the federal nature of the claim." *Id.* (citations and quotation marks omitted). Exhaustion is not complete unless the petitioner "take[s] his claim 'to the state's highest court, either on direct appeal or on collateral review.'" *Johnson v. Florida*, 32 F.4th 1092, 1096 (11th Cir. 2022) (quoting *Ward v. Hall*, 592 F.3d 1144, 1156 (11th Cir. 2010)). The exhaustion requirement — acting together with the requirements of § 2254(d) — was designed "to ensure that state proceedings are the central process [for asserting constitutional challenges to state convictions], not just a preliminary step for a later federal habeas proceeding[.]" *Harrington*, 562 U.S. at 103 (citing *Wainwright v. Sykes*, 433 U.S. 72, 90 (1977)). Consequently, if a claim raised in a § 2254 petition is not exhausted, the claim has

been procedurally defaulted and must be dismissed. *See Ward*, 592 F.3d at 1156.

Regarding Grounds Two and Three, Respondent contends that, while both issues were raised in Petitioner's Postconviction Motion, Petitioner failed to raise them again during the "appeal of the denial of that motion." ECF No. [9] at 6. Respondent argues that Grounds Two and Three were never presented "to the state's highest court . . . on collateral review," and these claims are now "procedurally defaulted from federal review." *Id.* at 5–6. The Court agrees, and finds that Grounds Five, Seven, and Eight are similarly unexhausted and defaulted. Under Florida law, ineffective assistance of counsel claims must be brought on collateral review in a Rule 3.850 motion. *See Sullivan v. Sec'y, Fla. Dep't of Corr.*, 837 F.3d 1195, 1199 (11th Cir. 2016). "[E]xhaustion usually requires not only the filing of a Fla. R. Crim. P. 3.850 motion, but *an appeal from its denial.*" *Nieves v. Sec'y, Fla. Dep't of Corr.*, 770 F. App'x 520, 521 (11th Cir. 2019) (emphasis added) (quoting *Leonard v. Wainwright*, 601 F.2d 807, 808 (5th Cir. 1979)). Although Petitioner raised the substance of Grounds Two, Three, Five, Seven, and Eight in his Postconviction Motion, he did not appeal the denial of those specific issues to the Fourth DCA. *See* ECF No. [10-1] at 262–99. Since the Fourth DCA lacked an opportunity to opine on the merits of those five ineffective-assistance claims, they are unexhausted. *See Mason v. Allen*, 605 F.3d 1114, 1119 (11th Cir. 2010). Moreover, Petitioner cannot return to state court to exhaust Grounds Two, Three, Five, Seven, and Eight by filing a second appeal from the denial of his Postconviction Motion. *See Ogle v. Johnson*, 488 F.3d 1364, 1370 (11th Cir. 2007). Accordingly, Grounds Two, Three, Five, Seven, and Eight are unexhausted and have been procedurally defaulted.

The Supreme Court has recognized two limited circumstances where a habeas petitioner may still seek review of a procedurally defaulted claim. First, the petitioner "can show cause for the default and actual prejudice resulting from the alleged constitutional violation." *Ward*, 592

F.3d at 1157 (citing *Wainwright v. Sykes*, 433 U.S. 72, 84–85 (1977)). "To show cause, the petitioner must demonstrate some objective factor external to the defense that impeded his effort to raise the claim properly in state court." *Id.* (internal quotation marks omitted). To show prejudice, the petitioner "must demonstrate that 'the errors at trial actually and substantially disadvantaged his defense so that he was denied fundamental fairness.'" *Id.* (quoting *McCoy v. Newsome*, 953 F.2d 1252, 1261 (11th Cir. 1992)). However, a habeas petitioner "has the burden of establishing cause and prejudice[.]" *Gordon v. Nagle*, 2 F.3d 385, 388 n.4 (11th Cir. 1993). Here, Petitioner never alleges that some "object factor external to the defense" prevented him from raising Grounds Two, Three, Five, Seven, and Eight on appeal, nor does he suggest that he was prejudiced by his failure to appeal those issues. *See generally* ECF Nos. [1, 3]. Since Petitioner failed to proffer any evidence that the "cause and prejudice" exception applies, he cannot excuse his procedural default on that basis. *See Wright v. Hopper*, 169 F.3d 695, 706 (11th Cir. 1999) ("Wright provides the court with no explanation or evidence to establish cause and prejudice. Accordingly, the remaining claims of ineffective assistance of counsel are barred from federal habeas review.").

Second, a habeas petitioner can rely on the "narrow" fundamental miscarriage of justice exception, but it only applies if there is "a constitutional violation [that] has probably resulted in the conviction of one who is actually innocent of the substantive offense." *Dretke v. Haley*, 541 U.S. 386, 393 (2004) (internal quotation marks omitted). As with the "cause and prejudice" exception, the petitioner bears the burden to "present reliable evidence not presented at trial such that it is more likely than not that no reasonable juror would have convicted him of the underlying offense." *Rozzelle v. Sec'y, Fla. Dep't of Corr.*, 672 F.3d 1000, 1011 (11th Cir. 2012) (internal quotation marks omitted; alterations accepted). This new evidence must show that the petitioner

is "factually innocent" of the crime — evidence calling into question the legal sufficiency of the conviction is insufficient. *See id.* at 1013 (citing *Bousley v. United States*, 523 U.S. 614, 623 (1998)).

Here, Petitioner proffers that his mother would provide "new reliable evidence" that "was not presented at trial." *Arthur v. Allen*, 452 F.3d 1234, 1245 (11th Cir. 2006).[5] According to Petitioner, the "linchpin of the State's case" was a 911 call that was allegedly made by Petitioner's mother. ECF No. [3] at 9. Petitioner says the State used the 911 call to establish "(1) the caller was Slade's mother; (2) Slade's nickname was 'Red,' and (3) Slade's mother was speaking to Slade, calling him a hard ass and telling Slade that the police was coming." *Id.* (errors in original). Petitioner claims his mother would now testify that "she was not the person who placed the 911 call" because "she was in the hospital at the time of the shooting" and that Petitioner "has never gone by the nickname 'Red.'" *Id.*

The putative testimony of Petitioner's mother does not meet the extremely high burden needed to meet the actual innocence standard for two reasons. One, the 911 call allegedly made by Petitioner's mother was not even close to the "linchpin" of the State's case. The State produced overwhelming evidence that Petitioner was the person who shot at the victims. The State played two other 911 calls — one made by Eddie Robinson, and another made by a woman named "Kira" — which reported that Petitioner was the shooter. *See* ECF No. [11-2] at 493–503. There were also multiple witnesses — including members of Petitioner's family and his longtime friends — who testified that Petitioner was at the scene of the shooting and either had a firearm or was going

---

[5] Petitioner also asserts that Eddie Robinson could have provided "new" testimony if counsel had "recalled Robinson and inquired as to why Robinson referred to Slade initially as 'Tavarus' [during the 911 call] and later changed the name of the shooter to 'Travis.'" ECF No. [3] at 17. The 911 call where Robinson initially called Petitioner "Travarus" instead of "Travis" was already admitted into evidence and heard by the jury, so it could not have been "new" for actual innocence purposes. *See Rozzelle*, 672 F.3d at 1018 n.21.

to get a firearm. *See id.* at 276, 281–82, 306–07, 347–48, 408–09, 422–23.

Two, the Court doubts that the jury would find Petitioner's mother to be a credible witness. The State would have called the credibility of Petitioner's mother into doubt given her close relationship to her son. *See Cardona v. Dixon*, No. 19-CV-81567, 2022 WL 2158715, at *12 (S.D. Fla. June 14, 2022) (finding that counsel was not ineffective for failing to call the petitioner's brother as a witness since "as a matter of trial strategy, counsel could well decide not to call family members as witnesses because family members can be easily impeached for bias" (quoting *Bergmann v. McCaughtry*, 65 F.3d 1372, 1380 (7th Cir. 1995))).[6] In short, even if Petitioner's mother testified at trial, her testimony would not have raised "sufficient doubt about [Petitioner's] guilt to undermine confidence in the result of the trial." *Arthur*, 452 F.3d at 1245. Petitioner has failed to show that he was actually innocent and cannot excuse his procedural default on that basis.

The Court finds that Grounds Two, Three, Five, Seven, and Eight are unexhausted and procedurally defaulted. Petitioner also failed to show that either the "cause and prejudice" or "fundamental miscarriage of justice" exceptions excuse his procedural default. Accordingly, Grounds Two, Three, Five, Seven, and Eight of the Petition must be **DISMISSED**.

### B.   The Merits

Having determined the exhaustion status of Petitioner's grounds for relief, the Court now moves on to the four grounds for relief that were not dismissed as unexhausted: Grounds One, Four, Six, and Nine. After reviewing each of these four claims, the Court agrees with Respondent that all must be denied on the merits.

---

[6] The Court also finds that a reasonable jury would have rejected the mother's testimony about Petitioner's nickname since multiple witnesses testified at trial that Petitioner goes by the nickname "Red." *See* ECF No. [11-2] at 246, 298, 408.

### i.   Ground One

In Ground One of the Petition, Petitioner alleges that "the prosecutor made improper comments to the jury both asserting facts not in evidence and moreso [sic] shifting the burden of proof" and that counsel rendered ineffective assistance of counsel by failing to object to this improper closing argument. ECF No. [1] at 5. In his Memorandum of Law, Petitioner identifies eight specific comments made by the prosecutor which were allegedly so prejudicial that it had the effect of denying Petitioner a fair trial. *See* ECF No. [3] at 4–7. Respondent counters that the state court reasonably applied federal law in denying this claim since lawyers have "wide latitude" to make their closing arguments. ECF No. [9] at 21.

A prosecutor's comments during closing arguments do not rise to the level of a constitutional violation unless "the remarks resulted in a trial so fundamentally unfair as to deny [the defendant] due process." *Williams v. Weldon*, 826 F.2d 1018, 1023 (11th Cir. 1987) (citing *Donnelly v. DeChristoforo*, 416 U.S. 637, 645 (1974)). "Such a determination depends on whether there is a reasonabl[e] probability that, in the absence of the improper remarks, the outcome of the trial would have been different." *Id.* Since a lawyer's arguments are not evidence, Florida law allows a prosecutor to make any inference "which may reasonably be drawn from the evidence" during closing arguments. *Bertolotti v. State*, 476 So. 2d 130, 134 (Fla. 1985). Counsel cannot be ineffective for failing to object to a prosecutor's closing argument unless the comments vitiated the integrity of the entire trial and undermine confidence in the petitioner's convictions. *See Smith v. Warden, Macon State Prison*, 803 F. App'x 272, 279 (11th Cir. 2020) (citing *Strickland*, 466 U.S. at 694).

The prosecutor's closing arguments come nowhere close to this exacting standard. For starters, defense counsel <u>did</u> object at several points to the prosecutor's closing arguments —

specifically alleging that the State was improperly bolstering some of the witnesses and that there was no evidence in the record that Petitioner's mother had made one of the 911 calls—but the state court overruled them. *See* ECF No. [11-2] at 617, 623, 634. The state court was in the best position to consider whether the prosecutor's comments were unduly prejudicial, and its decision to overrule counsel's objections indicate that the prosecutor's comments were fair inferences that could be drawn from the evidence and did not inject new facts into evidence, shift the burden of proof, or otherwise prejudice Petitioner's defense. *See Lindsey v. Smith*, 820 F.2d 1137, 1155 (11th Cir. 1987).

The only part of the closing argument that presents even a close question is when, on rebuttal, the prosecutor said, "You don't have to start deliberations by presuming [Petitioner] is innocent." ECF No. [11-2] at 667. The prosecutor's very next sentence, however, provides needed context: *"*You can walk in [the jury room] and you can find based on everything you have heard, based on everything you have seen, that [Petitioner] is guilty." *Id.* When the prosecutor's argument is viewed in its totality—and not in isolation as Petitioner would have the Court do—it is clear that the prosecutor <u>was not</u> suggesting that Petitioner had to prove his innocence and instead was merely commenting on the strength of the State's evidence. *See United States v. Lopez*, 590 F.3d 1238, 1256 (11th Cir. 2009) ("Prosecutorial misconduct must be considered in the context of the entire trial[.]"); *see also Austin v. Dixon*, No. 20-CV-62294, 2023 WL 9184847, at *12 (S.D. Fla. Nov. 28, 2023) ("Even when a prosecutor voices a personal opinion, but indicates this belief is based on evidence in the record, the comment does not require a new trial."). Even if this comment was somehow improper, this statement within the lengthy closing argument did not "so infect the trial with unfairness as to make the resulting conviction a denial of due process." *Lindsey*, 820

F.2d at 1155. Since it was not unreasonable for the state court to find that the prosecutor's comments during closing arguments were proper, Ground One is **DENIED**.

### ii.     Grounds Four and Six

Grounds Four and Six of the Petition concern counsel's effectiveness prior to trial. In Ground Four, Petitioner "complains that defense counsel should have moved prior to trial to have count three, possession of a firearm by a convicted felon, bifurcated for trial." ECF No. [3] at 13. Petitioner claims that the failure to bifurcate the trial meant that the jury was informed that Petitioner had "previously been convicted of a felony" and that this knowledge prejudiced his defense. *Id.* Regarding Ground Six, Petitioner contends that, despite being appointed standby counsel for trial, his defense attorney "candidly admitted that he was not prepared to try the case" and counsel was ineffective for failing to adequately prepare for trial after being appointed standby counsel. *Id.* at 19. Petitioner also suggests that counsel should have been prepared to try Petitioner's case without waiving Petitioner's speedy trial rights, and Petitioner only chose to represent himself because of counsel's inability to try his case within a reasonable time frame. *See id.*

Petitioner's arguments have no merit. Petitioner blames counsel for making ineffective pretrial decisions, but defense counsel did not represent Petitioner until the middle of his trial. Petitioner waived his right to counsel and chose to represent himself, even after the trial court warned him of the dangers of self-representation at a *Faretta* hearing. *See* ECF No. [11-1] at 7. Both the state court and defense counsel advised Petitioner during the *Faretta* hearing that counsel would "do[ ] nothing other than sit in the back of the courtroom until he is called on" and that standby counsel would not take depositions or make any other pretrial preparations. *Id.* at 9–10. Despite those warnings, Petitioner stated that he understood the dangers and elected to

represent himself. *See id.* at 11–13. Since Petitioner chose to represent himself, it was his responsibility to file any pretrial motions he felt were proper — including a motion to bifurcate. "A defendant who elects to represent himself cannot thereafter complain that the quality of his own defense amounted to the denial of 'effective assistance of counsel.'" *United States v. Roggio*, 863 F.2d 41, 43 (1989) (quoting *Faretta*, 422 U.S. 806, 834 n.46 (1975)). In short, it was Petitioner's obligation to file any pretrial motions he felt were necessary and he cannot retroactively blame his failures on counsel.[7]

Petitioner's belief that standby counsel should have been up-to-speed and completely ready to take over at trial is similarly misplaced. When a criminal defendant decides to represent himself, he does not have the right to "hybrid representation," *i.e.*, to have counsel assist in the presentation of a *pro se* defendant's case. *Cross v. United States*, 893 F.2d 1287, 1291–92 (11th Cir. 1990); *see also Simpson v. Battaglia*, 458 F.3d 585, 597 (7th Cir. 2006) ("[*McKaskle v. Wiggins*, 465 U.S. 168, 183 (1984)] supports the conclusion that there is no right to standby counsel."). Once Petitioner agreed to represent himself, he discharged counsel of his normal obligations to perform effectively for Petitioner because Petitioner was no longer his client. Counsel was not required to do all the work usually necessary for trial preparation because Petitioner willingly accepted that responsibility for himself. *See Moody v. Comm'r, Ala. Dep't of Corr.*, 682 F. App'x 802, 810 (11th Cir. 2017) (affirming, on habeas review, the state court's finding that standby counsel was not required to "perform extensive pretrial investigation" at the direction of the *pro se* defendant); *Alsaedi v. Sec'y, Dep't of Corr.*, No. 18-CV-312, 2018 WL 9537929, at *3 (M.D. Fla. Aug. 27, 2018) ("Moreover, the United States Supreme Court has

---

[7] For this same reason, the Court would have denied Grounds Seven and Eight on their merits if Petitioner had properly exhausted them.

never held that standby counsel is required to conduct any investigation in a noncapital case, and the state court's conclusion that counsel's performance was not deficient was neither contrary to nor an unreasonable application of clearly established Supreme Court precedent."). Petitioner was also aware that defense counsel was not fully prepared for trial and still willingly agreed to terminate his self-representation and be represented by counsel. *See* ECF No. [11-2] at 442.[8]

Finally, Petitioner cannot argue that he was presented with a "Hobson's choice" when he had to choose to either waive his speedy trial rights or his right to counsel. A lawyer "may waive his client's right to a speedy trial," even without the client's consent, since scheduling is one of the strategic decisions a lawyer has total discretion over. *Fayson v. Sec'y, Fla. Dep't of Corr.*, 568 F. App'x 771, 773 (11th Cir. 2014) (citing *New York v. Hill*, 528 U.S. 110, 115 (2000)). Defense counsel was well within his discretion to determine that he needed to waive Petitioner's speedy trial right to be ready for trial, and Petitioner cannot claim that he was "coerced" into representing himself when counsel made a perfectly reasonable strategic decision to waive speedy trial and seek more time to prepare. *See Ether v. Dixon*, No. 20-CV-60241, 2022 WL 1908918, at *10 (S.D. Fla. June 3, 2022) (rejecting argument that defense counsel "coerced" the petitioner into "waiving her right to a speedy trial" since counsel "can waive his client's speedy-trial rights without his client's consent").

Based on the foregoing, Petitioner has not shown that counsel did not perform ineffectively while Petitioner was proceeding *pro se*. The Court **DENIES** Grounds Four and Six.

---

[8] The record also shows that defense counsel performed admirably (and effectively) once Petitioner ceded control of his case back to defense counsel. Defense counsel, aware of his own limitations, promptly moved for a continuance, which was denied. *See* ECF No. [11-2] at 440–41. Defense counsel was still able to examine witnesses, lodge evidentiary objections, and present a closing argument. Even the state court and Petitioner expressed that counsel had performed well under the circumstances. *See id.* at 597, 673–74, 721.

### iii.  Ground Nine

Petitioner asserts in Ground Nine that he "was denied effective assistance of counsel due to the cumulative effect of counsel's deficient performance and the prejudice rendered therein." ECF No. [3] at 22. Cumulative error only exists where there is "an aggregation of non-reversible errors." *Morris v. Sec'y, Dep't of Corr.*, 677 F.3d 1117, 1132 (11th Cir. 2012). Since "none of [Petitioner's] individual claims of error or prejudice have any merit," there are no errors to "accumulate" and Petitioner's cumulative error claim must fail. *Id.* Ground Nine is **DENIED**.

### C.  Evidentiary Hearing

In a habeas corpus proceeding, the burden is on the petitioner to establish the need for a federal evidentiary hearing. *See Chavez v. Sec'y, Fla. Dep't of Corrs.*, 647 F.3d 1057, 1060 (11th Cir. 2011). "[I]f the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing." *Schriro v. Landrigan*, 550 U.S. 465, 474 (2007). Here, the pertinent facts of the case are fully developed in the record, and the Court can "adequately assess [Petitioner's] claim[s] without further factual development." *Turner v. Crosby*, 339 F.3d 1247, 1275 (11th Cir. 2003). Accordingly, Petitioner is not entitled to an evidentiary hearing. *See id.*

### D.  Certificate of Appealability

A prisoner seeking to appeal a district court's final order denying his petition for a writ of habeas corpus has no absolute entitlement to appeal and must obtain a certificate of appealability. *See* 28 U.S.C. § 2253(c)(1); *Harbison v. Bell*, 556 U.S. 180, 183 (2009). A certificate of appealability shall issue only if Petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make such a showing, Petitioner must demonstrate that "reasonable jurists" would find the correctness of the district court's rulings

"debatable." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Upon consideration of the record, the Court concludes there is no basis to issue a certificate of appealability.

## IV.    CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED** as follows:

1.    Petitioner's Petition Under 28 U.S.C. § 2254 for a Writ of Habeas Corpus by a Person in State Custody, **ECF No. [1]**, is **DISMISSED** in part on procedural grounds and **DENIED** in part on the merits.

2.    A certificate of appealability is **DENIED**. Because there are no issues with arguable merit, an appeal would not be taken in good faith, and thus, Petitioner is not entitled to appeal *in forma pauperis*.

3.    The Clerk of Court is directed to **CLOSE** this case.

**DONE AND ORDERED** in Chambers at Miami, Florida, on February 22, 2024.

**BETH BLOOM**
**UNITED STATES DISTRICT JUDGE**

Copies to:

Counsel of Record

Travis Lee Slade, *PRO SE*
L35401
South Bay Correctional Facility
Inmate Mail/Parcels
600 U.S. Highway 27 South
South Bay, FL 33493